UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT RICHARDS,<br><br>    Plaintiff,<br><br>  v.<br><br>CENTRIPETAL NETWORKS, INC.; STEVEN ROGERS; JONATHAN ROGERS; and JOHN DOES 1-10,<br><br>    Defendants. | Case No. 4:23-cv-00145-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

Pending before the Court is Defendant Centripetal Networks Inc., Steven Rogers, and Jonathan Rogers' Motion to Dismiss (Dkt. No. 35, "Mot.") the First Amended Complaint (Dkt. No. 26-1, "FAC"). Plaintiff opposes the motion. Dkt. No. 41 ("Opp."). For the reasons set forth below, the Court **GRANTS** the motion in part and **DENIES** the motion in part.[1]

I.  BACKGROUND

Plaintiff Albert Richards purchased two identical Convertible Promissory Notes (the "Notes") in the amount of $250,000 each from Centripetal Networks, Inc. FAC ¶¶ 8–9. The Notes guaranteed Plaintiff the option to convert his outstanding principal and interest into shares of the company upon "any sale and issuance of equity securities" by Centripetal. FAC at 1.

Plaintiff alleges that from 2016 through 2019, Centripetal sold and issued different "equity securities" without providing notice to Plaintiff as required in the Notes. *Id.*

In October 2019, the parties reached a settlement agreement in which Centripetal paid the balance on the Notes and Plaintiff relinquished his conversion rights. *Id.* at 2. In the Settlement Agreement, Defendants represented that "no equity securities have been issued that would give rise to the Creditor's option to convert" under the Notes. *Id.*; *Id.*, Ex. S at 2. The Settlement Agreement also provided that Plaintiff "acknowledges and agrees that the issuance by Centripetal

---

[1] The Court finds this matter suitable for resolution without a hearing, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78.

1  of common options and/or warrants do [sic] not constitute a Next Non-03 Round[2] and the issuance
2  of any such options or warrants does not trigger any right or entitlement to conversion provided
3  for in the Notes." *Id.*

4  Plaintiff claims that Defendants fraudulently induced him into signing the agreement.
5  Specifically, he alleges that Defendants falsely represented that they had not issued equity
6  securities in order to coax him into signing away his rights to conversion. Plaintiff accordingly
7  brings claims for breach of contract (Count One); breach of the implied covenant of good faith and
8  fair dealing (Count Two); breach of fiduciary duty (Count Three); constructive fraud (Count
9  Four); concealment (Count Five); negligent misrepresentation (Count Six); intentional fraud
10 (Count Seven); fraudulent inducement (Count Eight)[3]; violation of California Code § 1668 (Count
11 Nine); unjust enrichment (Count Ten); violation of California Corporation Code § 25401
12 prohibiting false statements in the sale of securities, and successor liability under the statute
13 (Counts Eleven and Twelve); and negligence (Count Thirteen).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] "Next Non-03 Round" refers to the then-anticipated round of financing by a company called Option3. FAC ¶ 14.
[3] Plaintiff includes a violation of California Code § 1668 in his fraudulent inducement claim (Count Eight), and also includes a separate claim for violation of that statute (Count Nine). The Court construes the fraudulent inducement and § 1668 claims as distinct.

1   In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as
2   true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v.*
3   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not
4   "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or
5   unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)
6   (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

7   Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
8   claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
9   the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
10  F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how"
11  of the alleged conduct, so as to provide defendants with sufficient information to defend against
12  the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent,
13  knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
14  Rule 9(b).

15  Even if the court concludes that a 12(b)(6) motion should be granted, the "court should
16  grant leave to amend even if no request to amend the pleading was made, unless it determines that
17  the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203
18  F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

19  **III. ANALYSIS**

20  **A. Breach of Contract (Count One)**

21  Plaintiff claims Defendants breached the Notes by failing to provide Plaintiff with notice
22  of its sales and issuances of equity securities.  Plaintiff further argues that this behavior breached
23  and invalidated the Settlement Agreement, which he claims was specifically based on the
24  representation that no equity securities had been issued at the time of execution.  Defendants argue
25  that the Settlement Agreement bars these claims in the first instance.

26  Under California law, "[a] contract must be so interpreted as to give effect to the mutual
27  intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636.  "[S]uch
28  intent is to be inferred, if possible, solely from the written provisions of the contract," read in their

3

ordinary and popular sense, unless it appears the parties used the terms in some special sense. *AIU Ins. Co. v. FMC Corp.*, 51 Cal. 3d 807, 822 (1995) (citing Cal. Civ. Code § 1639). If the language used is "clear and explicit," then it controls as a matter of law. *Segal v. Silberstein*, 156 Cal. App. 4th 627, 633 (2007). But where a contract is "capable of two or more constructions, both of which are reasonable," it is considered ambiguous. *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006). Where the language "leaves doubt as to the parties' intent," the motion to dismiss must be denied. *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir.1986).

Virginia law governs the Settlement Agreement, *see* FAC, Ex. S at 4, although the parties focus on California law in their arguments on this issue. The Court analyzes the issues raised under the laws of both states. In Virginia, when a contract as analyzed on the whole is "clear, unambiguous, and explicit, a court asked to interpret such a document should look no further than the four corners of the instrument." *Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co., LLC*, 276 Va. 346, 353 (2008). Conflicting interpretations reveal an ambiguity only where they are reasonable. *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179, 788 S.E.2d 237 (2016). An ambiguity exists when language is "of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or more things at the same time." *Allen v. Green*, 229 Va. 588, 592 (1985).

### i. Scope of Waiver in the Settlement Agreement

The Court first analyzes whether the Settlement Agreement bars Plaintiff's claims. Defendants argue that the carveout provision in question explicitly precludes the breach of contract claim because Plaintiff "acknowledged and agreed" that Centripetal's "issuance of common options and/or warrants do [sic] not constitute a Next Non-03 Round" and that "the issuance of any such options or warrants does not trigger any right or entitlement to conversion provided for in the Notes." In response, Plaintiff points to Paragraph 6 of the Settlement Agreement, which notes that "[n]othing herein contained shall be construed as a substitution or novation of the original Indebtedness evidenced by the Notes or any of the other Loan Documents" and that "[n]othing herein contained shall be construed to modify any other agreement or the terms of any other investment by Creditor in Centripetal, including any preferred

4

share holdings." Opp. 15–16 (citing FAC, Ex. S at 2.)

Here, the Settlement Agreement contains a specific provision and a general disclaimer. It is a "standard rule of contract interpretation" that "specific terms control over general ones." *United States ex rel. Welch v. My Left Foot Children's Therapy*, LLC, 871 F.3d 791, 797 (9th Cir. 2017) (quoting *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 891 (9th Cir. 2003)); *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 373 n.9 (2017) ("When two provisions of a contract conflict with one another, and one provision specifically addresses the dispute at hand while the other remains general, we have consistently held that the specific provision will govern over the general."). Accordingly, the specific provision governs over the general. Plaintiff's argument that the Settlement Agreement cannot "modify the terms of any other agreement" would render the provision clarifying the scope of a triggering event meaningless. *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 813 F.3d 1155, 1171 (9th Cir. 2015) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable.") (internal citation omitted); *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12 (1989) ("An interpretation which renders part of the instrument to be surplusage should be avoided."); *Pocahontas Min. Liab. Co. v. CNX Gas Co.*, LLC, 276 Va. 346, 353 (2008) ("No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly.").[4] Therefore, the Court finds that the Settlement Agreement operates to bar the breach of contract claims relating to the issuance of common options and warrants.

    **ii. The Settlement Agreement Does Not Bar Claims for the "Exercise" of Options**

As noted, the carveout in the Settlement Agreement provides that the "issuance of options

---

[4] Plaintiff's extrinsic allegation that Defendants "slipped" this carveout provision into the five-page contract with Plaintiff "unawares" does not suggest ambiguity and is not considered. *See* FAC ¶¶ 146–47; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("failure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract").

5

and/or warrants" does not trigger Centripetal's obligations under the notes. Plaintiff contends that the language in the carveout does not apply to the sale and issuance of common stock upon the *exercise* of those options, and contends that the "issuance" of "warrants" is too general and ambiguous to bar his allegations related to warrants.

As to the exercise of stock options, Plaintiff argues that the issuance of options and issuance of shares on the exercise of options are two distinctly different acts. Plaintiff contends that the issuance of an option does not necessarily precede or follow the issuance of shares upon the exercise of that option because these acts occur at different times, new consideration is exchanged, and different types of equity securities are issued.[5] Defendants counter that the issuance of options should encompass the sale and issuance of common stock upon the exercise of those options. At this early stage, the Court finds that whether the carveout applies to bar claims related to the issuance of shares after the "exercise" of these options is susceptible to multiple interpretations. *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1190–91 (N.D. Cal. 2012). *See In re Yahoo! Litig.*, 251 F.R.D. 459, 471–72 (C.D. Cal. 2008) (allowing plaintiffs to conduct discovery regarding their interpretation that references to "Sponsored Search" and "Content Match" products indicate a promise to target advertisements because "[a]t this stage of the proceedings . . . the Court is unable to dismiss, out of hand, plaintiffs' contention that extrinsic evidence will show that they bargained for targeted advertising services, even if the Agreement appears on its face to state otherwise.").[6] Plaintiff adequately pleads that his rights were triggered when Centripetal issued shares of stock upon the exercise of stock options by their holders. *See* FAC ¶ 59 (discussing shares issued as a result of 39,583 options exercised); *id.* ¶ 78 ("In the first quarter of 2017, Centripetal issued 82,400 shares of stock at $0.05 per share").

As to the scope of the "issuance" of "warrants," Plaintiff argues that there is some ambiguity based on extrinsic evidence of the parties' prior use of these terms, and that "warrants"

---

[5] Plaintiff contends that this exercise of options still falls under the ambit of the "sales and issuances of securities" provision under the Notes that triggers the right to convert.

[6] Defendants note that California Corporations Code § 25017(e) provides that "neither the exercise of the right to purchase" shares pursuant to options or warrants "nor the issuance of securities pursuant thereto is an offer of sale." But they provide no authority suggesting that this definition should govern the interpretation of a private contract absent adoption in the contract, and the Court is unable to find such authority.

1   here may not encompass the various issuances of warrants at issue.  Whereas the issuance of
2   shares upon the exercise of options is plausibly distinct from the issuance of options, the term
3   "warrant" naturally includes the various types of warrants and therefore is not ambiguous.  *See*
4   *HotChalk, Inc. v. Scottsdale Ins. Co.*, 736 F. App'x 646, 648 (9th Cir. 2018) ("California courts
5   ascribe words their plain meaning and give broad meaning to broad terms…."); *see also Bay*
6   *Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal.4th 854, 868 (1993) (In contract
7   interpretation, "a word with a broad meaning or multiple meanings may be used for that very
8   reason—its breadth—to achieve a broad purpose."); *Smith v. Smith*, 43 Va. App. 279, 287 (2004)
9   ("[I]f no patent or latent ambiguities exist, a court should enforce the plain meaning of the
10  contractual language without resort to extrinsic evidence.").

Accordingly, the Court denies the motion to dismiss as to the breach of contract claim.

**B.  Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Two)**

Plaintiff alleges a violation of the implied covenant of good faith and fair dealing, but this claim is duplicative of the breach of contract claim.  Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement."  *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (Cal. Ct. App. 2012) (quotation omitted).  The implied covenant may not, however, duplicate a breach of contract claim.  *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 325, 352 (Cal. 2000) ("[W]here breach of an actual [contract] term is alleged, a separate implied covenant claim, based on the same breach, is superfluous."); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1401 (Cal. Ct. App. 1990), *as modified on denial of reh'g* (Oct. 31, 2001) ("[A]s [the plaintiffs] have alleged nothing more than a duplicative claim for contract damages, the trial court was correct in sustaining a demurrer to this count without leave to amend.").  It supplements "the express contractual covenants [] to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract."  *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1204 (Cal. Ct. App. 2013) (quotation omitted).

Plaintiff appears to premise the implied covenant claim on two separate acts.  First,

7

Plaintiff alleges Centripetal breached the implied covenant "when it knowingly and willfully deprived Richards of the benefit of his convertible Notes, by obscuring, omitting, or outright denying the existence of the triggering events that gave rise to Richards's right to convert." FAC ¶ 181. The same allegations underlie the breach of contract claim. *See id.* ¶ 174 (Defendants "knowingly and repeatedly failed to give Richards notice of its sales and issuances of equity securities, failed to disclose the material terms and conditions of [the] same, and denied Richards his contractually-guaranteed opportunity to convert his Notes into validly issued, fully paid and nonassessable shares of the securities issued"). Second, Plaintiff alleges that "Centripetal schemed to induce Richards to sign a contract purporting to limit, restrict, and/or waive his rights" in violation of the implied covenant. *Id.* ¶ 183. Again, this allegation is duplicative of the contract claim. *See id.* ¶ 175 ("Centripetal's breach extended to the fraudulently obtained 2019 settlement agreement, which Richards signed based on Defendants' years of misstatements, omissions, and concealments. Centripetal falsely warranted, in Paragraph 5a of that agreement, that 'no event of conversion' had occurred to trigger Richards's conversion rights.").

As such, these allegations "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1377 (1990). The Court finds that Plaintiff's claim for breach of the implied covenant "may be disregarded as superfluous." *Id.*

### C. Fraudulent Inducement (Count Eight)

To establish that the Settlement Agreement is unenforceable as procured by fraud, Plaintiff must plausibly allege five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). The elements are the same under Virginia law. *See Evaluation Research Corp. v. Aleguen,* 439 S.E. 2d 387, 390 (Va. 1994)).

Plaintiff alleges that Defendants fraudulently induced him to enter the Settlement Agreement. Specifically, Plaintiff alleges that Defendants knowingly misrepresented that "no

8

triggering event" took place under the Notes, and that this representation induced him to sign the Settlement Agreement.

But Plaintiff specifically ceded that "issuance of options and/or warrants" would not trigger the right to convert or notice of the same.  Regardless of whether Centripetal issued options and warrants, Plaintiff knowingly limited the scope of the trigger for conversion.  Accordingly, the Court construes the fraudulent inducement claim as follows: because Defendants knowingly issued shares upon the exercise of options without notifying Plaintiff, they knowingly misrepresented that no triggering event had occurred under the Notes to induce him into signing the Settlement Agreement.  Plaintiff plausibly alleges that he justifiably relied on the misrepresentation and as a result the Settlement Agreement limited his rights to conversion, causing injury.

Defendants argue that certain investor reports establish that Plaintiff had actual knowledge that shares were issued upon the exercise of options.  *See* Dkt. No. 48 at 9.  But at the pleading stage, accepting Plaintiff's allegations as true, this argument does not establish that the claim fails as a matter of law, and Plaintiff thus states a claim for fraudulent inducement.  Whether he can factually substantiate the claim is an issue for summary judgment or trial.

### D. Violation of California Code § 1668 (Count Nine)

In general, § 1668 of the California Corporate Code applies only to concurrent or future torts.  *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal.App.5th 146, 152–153 (2018) ("[w]e are not aware of any case law applying section 1668 to torts where all elements are past events . . . the weight of authority recogniz[es] that section 1668 applies only to concurrent or future torts.").  In other words, this provision is meant to prohibit contracts releasing liability for future or concurrent torts, not to prohibit settlements of disputes relating to past conduct.  *City of Santa Barbara v. Superior Court*, 41 Cal.4th 747, 754–755 (2007).  That said, courts have applied § 1668 "to negate exemption clauses that would otherwise proscribe liability for fraudulent inducement of the very contracts with the exemption clauses."  *SI 59*, 29 Cal.App.5th at 152 (citing *Blankenheim v. E. F. Hutton & Co.*, 217 Cal.App.3d 1463, 1471–1473 (1990) (plaintiffs were fraudulently induced into signing agreements with hold harmless clauses; § 1668 prevented the defendant from relying on

the hold harmless clauses to exempt it from "responsibility for its own misrepresentations"); *Simmons v. Ratterree Land Co.*, 217 Cal. 201, 204 (1932) (citing § 1668 and stating "a seller cannot escape liability for" fraudulent inducement of a contract by inserting a release of liability into the contract)). Here, the waiver of Plaintiff's rights involved past action and the Settlement Agreement does not proscribe liability for fraudulent inducement. Accordingly, the § 1668 claim fails.

### E. Negligent Misrepresentation (Count Six); Fraud (Count Seven)

Plaintiff alleges numerous misrepresentations or omissions in the FAC about the financial health of Centripetal and the existence (or absence) of events triggering Richards's right to convert. As to the first category of misrepresentations, Plaintiff fails to establish how he was damaged by alleged misrepresentations regarding the financial health of the company, as the only damages alleged arise from the lost opportunity to convert. As to the second category, Plaintiff agreed that the "issuance of warrants and options" would not trigger a conversion event under the Notes. The only potentially relevant misrepresentations regarding triggering events would concern the issuance of shares upon the exercise of options. Here, the only alleged actionable misrepresentation or omission occurred in the contract itself, when Defendants represented that no triggering event had occurred. Because Plaintiff meets the standard for fraud, he also meets the lower standard for negligent misrepresentation.

### F. Breach of Fiduciary Duty (Count 3); Constructive Fraud (Count 4); Fraudulent Concealment (Count 5)

Plaintiff's third, fourth and fifth claims, for breach of fiduciary duty, constructive fraud, and concealment, respectively, each require a fiduciary duty. For a fiduciary duty to arise, a defendant "must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008) (quotation omitted). Under California law, "[a]bsent special circumstances . . . a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006); *see also Pittelman v. Pearce*, 6 Cal. App. 4th 1436, 1441–1443

10

(1992) (holding that under Delaware law, which the court stated is congruent with California law, a corporation and its directors owe no fiduciary duty to holders of the corporation's convertible notes); *True Gentlemen's Jerky, Inc. v. 1K1V TGJ Holdings, LLC*, 2022 WL 3370792, at *3–4 (N.D. Cal. Aug. 16, 2022) (granting motion to dismiss breach of fiduciary duty claim brought by borrower against lender because no fiduciary relationship exists between company and holder of its promissory notes).

The FAC does not allege any facts suggesting such "special circumstances." *See id.*; *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1017 (N.D. Cal. 2015) (finding no fiduciary duty when plaintiff failed to allege counterparty had vulnerability such as youth or ill health "so as to give rise to equitable concerns"). Because Plaintiff failed to plead anything more than a lender-borrower relationship, he fails to state claims for breach of fiduciary duty, constructive fraud, and concealment.

### G. Negligence (Count 13)

Plaintiff fails to tie claims of general misconduct—including so-called "accounting chicanery" and deceptive conduct regarding the financial state of Centripetal and its handling of securities—with any damages suffered. As noted previously, the only damages alleged arise out of the missed conversion opportunities. Therefore, the only conduct that is actionable is the alleged misrepresentation in the Settlement Agreement. Because this allegation is encompassed by the negligent misrepresentation claim, the general negligence claim is duplicative and therefore dismissed.

### H. Unjust Enrichment  (Count Ten)

A claim for unjust enrichment requires a plaintiff to plead two elements: "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank,* 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (Cal. Ct. App. 2000). Fundamental to a claim for unjust enrichment is the basic notion that a "person is not permitted to profit by his own wrong." Restatement (Third) of Restitution & Unjust Enrichment § 3. The gravamen of this claim is one of quasi-contract. *First Nationwide Savings v. Perry*, 11 Cal.App.4th 1657, 1663 (1992); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (explaining that restitution

and unjust enrichment "describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request" (internal quotation marks omitted)). Though a plaintiff may be required to elect remedies at a later stage, at the pleading stage a claim for restitution based on unjust enrichment may be pleaded in the alternative to a contract claim. *See Hawthorne v. Umpqua Bank*, No. C-11-6700 YGR, 2012 WL 1458194, at *3 (N.D. Cal. Apr. 26, 2012); *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *10 n.12 (N.D. Cal. Mar. 28, 2023) (noting that "subsequent Ninth Circuit law establishes that the duplicative nature of an unjust enrichment/quasi-contract claim is not a valid reason to dismiss it.").

Plaintiff fails to allege that he conferred a benefit on Defendants and that Defendants retained that benefit. Defendants repaid the balance due under the Notes and thus did not retain a profit. FAC ¶ 153. Plaintiff fails to state a claim for unjust enrichment.

### I. Violation of California Corporation Code Section 25401 and 25403 (Counts Eleven and Twelve)

Neither party made specific arguments concerning these statutes. As such, the motion is denied as to these claims.

## IV. CONCLUSION

Defendants' motion to dismiss is **GRANTED** in part insofar as the Court dismisses with leave to amend:

1. Count Two (breach of the implied covenant of good faith and fair dealing)
2. Count Three (breach of fiduciary duty)
3. Count Four (constructive fraud)
4. Count Five (concealment)
5. Count Nine (violation of California Code § 1668)
6. Count Ten (unjust enrichment)
7. Count Thirteen (negligence)

Defendants' motion is otherwise **DENIED**. Plaintiffs shall file any Second Amended Complaint no later than January 23, 2024. A case management conference is set for February 6,

2024, with a joint case management statement due by January 30, 2024.  All counsel shall use the following dial-in information to access the call:

    Dial-In: 888-808-6929

    Passcode: 6064255

All attorneys appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the CRD.  For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:  1/2/2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge