UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT RICHARDS,<br><br>    Plaintiff,<br><br>v.<br><br>CENTRIPETAL NETWORKS, INC.; STEVEN ROGERS; JONATHAN ROGERS; and JOHN DOES 1-10,<br><br>    Defendants. | Case No. 4:23-cv-00145-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS AND DENYING MOTION TO STAY DISCOVERY**<br><br>Re: Dkt. Nos. 63, 64, and 65 |

Defendant Centripetal Networks Inc., Steven Rogers, Jonathan Rogers, and Paul Barkworth ("Defendants") move to dismiss this action under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 63). Defendant Paul Barkworth separately moves to dismiss this action under Fed. R. Civ. P. 12(b)(2) (Dkt. No. 64). Defendants also move to stay discovery (Dkt. No. 65). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss for failure to state a claim, **GRANTS** the motion to dismiss for lack of personal jurisdiction, and **DENIES** the motion to stay discovery.[1]

**I. BACKGROUND**

Plaintiff Albert Richards purchased two identical Convertible Promissory Notes (the "Notes") in the amount of $250,000 each from Centripetal Networks, Inc. Second Amended Complaint, Dkt. No. 53 ¶ 9 ("SAC"). The Notes guaranteed Plaintiff the option to convert his outstanding principal and interest into shares of the company upon "any sale and issuance of equity securities" by Centripetal. *Id.* at ¶ 17.

Plaintiff alleges that from 2016 through 2019, Centripetal sold and issued different "equity securities" without providing notice to Plaintiff as required in the Notes. *Id.* ¶ 30.

In October 2019, the parties executed the Settlement Agreement, in which Centripetal paid

---

[1] The Court finds this matter suitable for resolution without a hearing, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78.

1  the balance on the Notes and Plaintiff relinquished his conversion rights. *Id.* ¶¶ 170–180. In the
2  Settlement Agreement, Defendants represented that "no equity securities have been issued that
3  would give rise to the Creditor's option to convert" under the Notes. *Id.*; *Id.*, Ex. T at 2. The
4  Settlement Agreement also provided that Plaintiff "acknowledges and agrees that the issuance by
5  Centripetal of common options and/or warrants do not constitute a Next Non-03 Round2 and the
6  issuance of any such options or warrants does not trigger any right or entitlement to conversion
7  provided for in the Notes." *Id.*

8   Plaintiff claims that Defendants fraudulently induced him into signing the Settlement
9  Agreement. Specifically, he alleges that Defendants falsely represented that they had not issued
10 equity securities to coax him into signing away his rights to conversion.

11  In its January 2, 2024 Order (Dkt. No. 50) ("FAC Order"), the Court dismissed claims in
12 the First Amended Complaint (Dkt. No. 26-1) for breach of the implied covenant of good faith and
13 fair dealing, breach of fiduciary duty, constructive fraud, concealment, unjust enrichment,
14 negligence, and violation of California Code § 1668. The Court denied the motion to dismiss as to
15 the breach of contract, fraud, and fraudulent inducement claims, as well as the claims arising under
16 California Corporation Code Sections 25401 and 25403.

17  In the SAC, Plaintiff now brings claims for breach of contract (Count One); breach of
18 fiduciary duty (Count Two); constructive fraud (Count Three); concealment (Count Four);
19 negligent misrepresentation (Count Five); fraud – intentional misrepresentation (Count Six);
20 fraudulent inducement (Count Seven); violation of California Code § 1542 (Count Eight);
21 violation of California Code § 1668 (Count Nine); unjust enrichment (Count Ten); and violation
22 of Corporation Code § 25401, and successor liability under the statute (Counts Eleven and
23 Twelve).

24 **II. LEGAL STANDARD**

25  **A. Motion To Dismiss For Lack Of Personal Jurisdiction**

26  A motion under Federal Rule of Civil Procedure 12(b)(2) challenges exercise of personal
27 jurisdiction over a defendant. Where no federal statute governs personal jurisdiction, the Court
28 applies the law of the state in which it sits, here, California. *Schwarzenegger v. Fred Martin*

1    *Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004).  California law allows for the exercise of

2    "jurisdiction on any basis not inconsistent with the Constitution of the state or of the United

3    States."  Cal. Civ. Proc. Code § 410.10.

4          Due process requires that the non-resident defendant have either a "substantial, continuous,

5    and systematic" presence in the forum state or sufficient "minimum contacts with [the forum state]

6    such that the maintenance of the suit does not offend traditional notions of fair play and substantial

7    justice."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  Where the non-resident

8    defendant's forum-related activities are not "substantial, continuous, and systematic," the court

9    must evaluate whether the specific activity giving rise to the plaintiffs' causes of action is

10   sufficiently related to the forum state.  *See Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437,

11   446, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Hanson v. Denckla,* 357 U.S. 235, 250–53, 78 S.Ct. 1228,

12   2 L.Ed.2d 1283 (1958).  The Ninth Circuit applies a three-part test to determine whether a non-

13   resident defendant's activities are sufficiently related to the forum state to establish personal

14   jurisdiction:

15       (1) The non-resident defendant must purposefully direct his activities or consummate some
16       transaction with the forum or resident thereof; or perform some act by which he
17       purposefully avails himself of the privilege of conducting activities in the forum, thereby
18       invoking the benefits and protections of its laws;
19       (2) the claim must be one which arises out of or relates to the defendant's forum-related
20       activities; and
21       (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it
22       must be reasonable.

23   *Schwarzenegger,* 374 F.3d at 802 (citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987)).  The

24   plaintiff bears the burden of demonstrating the first two parts.  *Boschetto v. Hansing,* 539 F.2d

25   1011, 1016 (9th Cir. 2008).  If the plaintiff fails to satisfy either of these parts, personal

26   jurisdiction is not established in the forum state.  *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1555

27   (9th Cir. 2006).  If the plaintiff carries this burden, then "the defendant must come forward with a

28   'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (citing

1  *Schwarzenegger,* 374 F.3d at 802).

2      If the motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiffs need only make a prima facie showing of jurisdiction. *Schwarzenneger,* 374 F.3d at 800. The plaintiffs must make this showing with respect to each claim. *Fiore v. Walden,* 657 F.3d 838, 858 (9th Cir. 2011). A plaintiff makes a "prima facie" showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint; where allegations are contested, they "are construed in the light most favorable to the plaintiff[s] and all doubts are resolved in [their] favor." *AT&T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996).

### B. Motion To Dismiss For Failure To State A Claim

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III. ANALYSIS

#### A. Personal Jurisdiction

Defendant Barkworth moves to dismiss for lack of personal jurisdiction. Plaintiff concedes that general jurisdiction does not exist. Dkt. 70 at 5 n.2. Instead, he argues that specific jurisdiction exists because "[Mr.] Barkworth has purposefully availed himself of the benefits of doing business in the State of California, including by conducting business with Richards and other California-based investors." SAC ¶ 5. In support of this contention, Plaintiff cites Barkworth's signature on the Notes (SAC Ex. B at 5) and certain emails he exchanged with Barkworth. In one set of emails in 2016, Barkworth alerted Plaintiff of a potential triggering event; one email supposedly omitted information concerning another Centripetal investor. *Id.* ¶¶ 74–83. In another set of emails in 2019, Barkworth allegedly made the false statement that "Centripetal is not negotiating an equity financing with another party at present." *Id.* ¶¶ 166–69. Shortly thereafter, Barkworth enclosed an early draft of the parties' Settlement Agreement. *Id.* ¶ 172.

Barkworth contends that because he took the relevant actions in his capacity as CFO of defendant Centripetal, jurisdiction is barred by the fiduciary shield doctrine, which "protects an

individual from being subjected to personal jurisdiction based on acts undertaken in the individual's corporate capacity." *Uttarkar v. Bajaj*, 2016 WL 393351, at *6 (N.D. Cal. Feb. 2, 2016) (citing *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir.1989)).  There are two exceptions to the fiduciary shield doctrine: "(1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities." *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 945 (N.D. Cal. 2014).  Specifically, "[p]ersonal liability on the part of corporate officers have typically involved instances where the defendant was the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." *Chunghwa Telecom Glob., Inc v. Medcom, LLC*, 2016 WL 5815831, at *6 (N.D. Cal. Oct. 5, 2016) (internal citations omitted).

       The SAC does not plausibly allege facts indicating that Barkworth planned the alleged fraud or played a substantive role in the negotiations for the Settlement Agreement beyond sending the draft of an agreement and sending a single allegedly false communication.  As such, the SAC falls short of alleging that Barkworth was a "central figure" or "guiding spirit" of any alleged misconduct.  *See Giotta v. Ocwen Fin. Corp.*, 2015 WL 8527520, at *4 (N.D. Cal. Dec. 11, 2015) ("Conclusory allegations that use the buzz words 'guiding spirit' or 'central figure' are insufficient to establish an exception to the corporate shield doctrine."); *Abundant Living Fam. Church v. Live Design, Inc.*, 2022 WL 2176583, at *3 ("a single conclusory statement that [defendants] … 'were direct participants' in the alleged wrongdoing" was "insufficient to show that the [defendants] were the moving force behind the infringing activity"); *Fasugbe v. Willms*, 2011 WL 3667440, at *3 (E.D. Cal. Aug. 22, 2011) ("If the court were to deem such conclusory allegations sufficient on a motion to dismiss, a plaintiff could force any officer of a company to defend a suit in his personal capacity simply by using the magic language that he was the 'guiding spirit' behind the allegedly wrongful conduct or the 'central figure in the challenged corporate activity.'")

       Because the fiduciary shield doctrine precludes the claim against Barkworth, the Court does not reach the other elements of personal jurisdiction.

       The Court notes that Plaintiff's briefing describes additional facts purporting to support

jurisdiction. However, Plaintiff has already amended the complaint twice, and Barkworth did not appear in either of the first two versions as a Defendant. Moreover, even as alleged it is plain to the Court that Barkworth was acting in his corporate capacity as CFO, which likely explains why Plaintiff chose not to sue him personally in either of the first two iterations of the Complaint. This sort of needlessly iterative pleading wastes the time and resources of the Court and the parties. At this stage, the Court will not provide a fourth opportunity to state a claim against Barkworth. The Court grants Defendant Barkworth's motion to dismiss for lack of personal jurisdiction without leave to amend.

### B. Breach of Contract (Count One)

Defendants argue that the breach of contract claim should be dismissed as untimely. Defendants also argue that the definitions set forth in California Corporations Code § 25017(e) govern the Notes and defeat Plaintiff's claim on its face.

#### i. Timeliness

Defendants contend that the contract claim under the Notes is barred by California's four-year statute of limitations. The SAC pleads two instances of stock issuances upon the exercise of options that triggered Plaintiff's right to convert, the first in two tranches between December 31, 2015, and April 28, 2016 (SAC ¶ 84) and the second in the first quarter of 2017. *Id.* ¶ 106. Defendants claim that because Plaintiff filed his original complaint in October 2022, any claim predicated on these issuances is time-barred.

Under the "discovery rule" exception, the applicable limitations period begins to run when plaintiff "actually discovered [his] injury and its negligent cause" or "could have discovered injury and cause through the exercise of reasonable diligence." *Arnold v. Metlife Auto & Home Ins. Agency, Inc.*, 2020 WL 1067002, at *5 (N.D. Cal. Mar. 5, 2020). Plaintiff alleges that he only began to suspect Defendants' fraud and breach of contract on November 6, 2020 when Centripetal disclosed the existence of millions of warrants and options. SAC ¶¶ 198–201. This prompted Plaintiff to conduct a "detailed study" of Defendants' investor reports, which revealed multiple examples of the "sale and issuance of equity securities." *Id.* ¶ 203.

Defendants contend that Plaintiff should have been able to discern the alleged breach from the investor reports. However, Defendants assured Plaintiff that the Notes had not been triggered, and Plaintiff was only able to discover the alleged fraud after "detailed study" of the investor reports. *Id.* As such, the question of disclosure and reasonable diligence is not appropriate at this early stage. *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal.App.4th 1308, 1320 (2007) (citation omitted) ("[O]nce properly pleaded, belated discovery is a question of fact.)

### ii. Application of California Corporations Code § 25017

In their initial motion, Defendants noted that California Corporations Code § 25017(e) provides that "neither the exercise of the right to purchase" shares pursuant to options or warrants "nor the issuance of securities pursuant thereto is an offer of sale." The Court held that Defendants did not provide sufficient authority to establish that Section 25017(e) should govern in a private contract absent explicit adoption. Defendants now clarify that the Notes explicitly provide that they are governed and construed under California law, and argue that the provision for the "sale" of securities should be construed as described in Section 25017(e). Defendants also argue that because the Notes were executed in California and constituted a securities transaction, they are automatically subject to the California Corporations Code and its operative definitions.

In response, Plaintiff contends that Section 25017(e) involves "an offer or sale," whereas the Notes provided for the option to convert his outstanding principal and interest into shares of the company upon "any sale and issuance of equity securities" by Centripetal. This difference, Plaintiff contends, undermines the application of Section 25017(e). Even if the Court could use the Section 25017(e) description in this context, Plaintiff argues, the relevant description departs from the common understanding of these concepts. Specifically, plaintiff highlights the distinction between the issuance of a stock and the purchaser's later decision to buy the stock. Only after the second event, plaintiff argues, does the company "issue" the common stock. Under Section 25017(e), common stock is "offered and sold" upon the issuance of the option or warrant. Ported into this context, the definition would establish that only one act—the issuance of a warrant—is subject to the law's registration-related requirements. Plaintiff contends that such an interpretation is counterintuitive because a company's financial statements cannot reflect the sale or issuance of

8

the common stock at the initial issuance and may never be able to reflect such a sale and issuance if the option or warrant holder never exercises their rights to purchase. This difference, Plaintiff argues, renders the application of this definition inapplicable to the dispute at issue.

Cal. Civ. Code § 1644 provides that "the words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." *See also Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 827 (9th Cir. 1957) (noting that although the question of car ownership by a conventional vendee must be determined by reference to the law of California, the statutory definition of "owner" is "not necessarily controlling for the words of a contract are to be taken in their ordinary and popular sense"). Here, the Court does not mechanistically apply the descriptions in Section 25017(e) to the Notes, as there appears to be a factual dispute over the parties' mutual intent of the definition of the term "sale and issuance." As such, the Court does not rely on the definition in Section 25017(e) to dismiss the breach of contract claim at this stage.

### C. Negligent Misrepresentation (Count Five), Fraud – Intentional Misrepresentation (Count Six), And Fraudulent Inducement (Count Seven)

Defendants raise timeliness arguments to defeat the fraud-related claims, contending that the claims are barred under both California's limitations period (three years) and Virginia's (two years).[2] *See* Cal. Code Civ. Proc. § 337; Va. Code § 8.01-243. However, "[t]he cause of action in [a fraud] case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Code Civ. Proc. § 338(d); *see also* Va. Code § 8.01-249 (similar). To invoke the discovery rule, Plaintiff must show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *See Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 175 (2012); Cal. Code Civ. Proc. § 338(d) *see also* Va. Code § 8.01-249. As noted previously, Plaintiff plausibly alleged that he was unable to discover the alleged fraud despite reasonable diligence.

---

[2] In its initial Order, the Court noted that Virginia law governed the Settlement Agreement due to a choice of law clause, but analyzed the claims under both states' laws for completeness. The Court does the same here.

9

1  The Court is otherwise unpersuaded by arguments reasserted from the previous motion. Plaintiff adequately alleges that Defendants misrepresented that no triggering events occurred in the leadup to the Settlement Agreement (*see, e.g.*, SAC ¶¶ 176) and in the Settlement Agreement itself. The Court denies the motion to dismiss the negligent misrepresentation, fraud, and fraudulent inducement claims.

### D. Violation of California Code § 1668 (Count Nine)

As Defendants correctly note, the Section 1668 claim necessarily is precluded given the Court's decision that Virginia law governs the Settlement Agreement.[3] And even assuming *arguendo* that Plaintiff established that California law governed the contract, he nevertheless fails to state a Section 1668 claim. The Court previously noted that Section 1668 applies only to concurrent or future torts, and that the waiver provision in question only applied to past acts. *SI 59 LLC v. Variel Warner Ventures, LLC*, 29 Cal.App.5th 146, 152–153 (2018) ("[w]e are not aware of any case law applying section 1668 to torts where all elements are past events . . . the weight of authority recogniz[es] that section 1668 applies only to concurrent or future torts."). Although Plaintiff now alleges that the Settlement Agreement "had as its object, directly or indirectly, to exempt Defendants from responsibility for their own concurrent or future fraud" in signing the agreement, this allegation does not change the scope of the relevant waiver. SAC ¶ 288. And while courts have applied Section 1668 "to negate exemption clauses that would otherwise proscribe liability for fraudulent inducement of the very contracts with the exemption clauses," *SI 59*, 29 Cal.App.5th at 152 (internal citation omitted), the Settlement Agreement does not proscribe liability for fraudulent inducement. Plaintiff still fails to allege concurrent or future fraud required for the Section 1668 claim. The Court grants the motion to dismiss this claim.

---

[3] "When two sophisticated, commercial entities agree to a choice-of-law clause . . . the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract." *Gaby's Bags, LLC v. Mercari, Inc.*, 2020 WL 1531341, at *2 (N.D. Cal. Mar. 31, 2020) (internal citation removed). California law broadly construes choice-of-law provisions to apply to all causes of action arising from or related to the contract. *See Powell-Willingham v. Joint Aid Mgmt. USA*, 789 Fed. Appx. 661 (9th Cir. 2020).

### E. Breach of Fiduciary Duty (Count Two)

The Court previously found that Plaintiff failed to plead a claim for breach of fiduciary duty because he merely alleged a lender/borrower relationship between himself and Defendants. Plaintiff now clarifies that he bases the fiduciary duty claim on his dual status as a holder of equity securities and a preferred shareholder in Centripetal. This equity stake allegedly "created a fiduciary relationship between Richards and the Directors and Officers of Centripetal, including Defendants." SAC ¶ 10.

However, Plaintiff only appears to make one claim based on his status as a stockholder, alleging that Steven Rogers' "self-dealing" in the issuance of stock options "dilute[ed] the value of his present or future shares." SAC ¶ 221. Such a dilution claim must be brought derivatively, and this is not a derivative action. *See Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1267 (Del. 2021) ("equity overpayment/dilution claims, absent more, are exclusively derivative"); *In re Wells Fargo S'holder Deriv. Litig.*, 282 F. Supp. 3d 1074, 1112 (N.D. Cal. 2017) (under internal affairs doctrine, breach of fiduciary duty claim involving a Delaware corporation "must be brought under Delaware law").[4]

Plaintiff's other claims are premised upon his status as a noteholder. These claims fail because "the Delaware Supreme Court has made clear that the default rule—that fiduciary duties do not extend to creditors—applies to convertible noteholders as well." *SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc.*, 2019 WL 13203776, at *3 (N.D. Cal. Oct. 10, 2019) ("[T]he holder of a convertible bond is and only is a corporate creditor to whom contractual but not fiduciary duties are owed unless he acts to end his entitlement to the legal protections his contract affords him and to assume the risks of stockholder status through exercise of the power of conversion.").[5]

---

[4] Centripetal's recent filings indicate that it now operates as an LLC. Contrary to Plaintiff's contention, LLCs are also subject to derivative claims. *See* 6 Del. Code § 18-1001.

[5] Plaintiff also alleges that Centripetal's "precarious financial position" in early 2017 resulted in a "shifting" of "the beneficiaries of directors' fiduciary duties [] from the corporation's stockholders to its creditors," allowing him to plead a fiduciary duty claim. His only authority for this point, *Quadrant Structured Prods. Co. v. Vertin*, held that creditors of an insolvent corporation may commence a derivative action on behalf of the corporation. 102 A.3d 155, 176 (Del. Ch. 2014). Plaintiff does not allege that Centripetal became insolvent, and does not bring a derivative action. As such, this argument is unconvincing.

11

1    Plaintiff therefore fails to plead that Defendants owed him a fiduciary duty.  The Court
2    dismisses this claim.

### F. Constructive Fraud (Count Three); Fraudulent Concealment (Count Four)

Plaintiff previously relied on an alleged fiduciary relationship to establish a duty supporting his claim of fraudulent concealment and constructive fraud, which the Court found insufficient.  The SAC still bases these claims on a supposed fiduciary duty, but in his briefing, Plaintiff now argues that the parties' "confidential relationship" established the duty required to plead constructive fraud and that the parties' "business relationship" established the duty required to plead fraudulent concealment.

As for constructive fraud, Plaintiff contends that as both a holder of equity securities and an owner of Series A-2 Preferred shares, he justifiably placed his trust in Defendants.  Accordingly, Plaintiff contends, he had the right to review Centripetal's confidential information and to communicate with Defendants on such confidential matters.  Again, Plaintiff pleads nothing more than an ordinary noteholder/issuer relationship.  He also provides no authority to suggest that this relationship can amount to a confidential relationship.

As for fraudulent concealment, under California law, "the elements of a cause of action for fraud based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Bank of Am. Corp. v. Superior Court*, 198 Cal.App.4th 862, 870 (2011) (internal citations and quotation marks omitted).

As for the second element, there are four circumstances under which the relevant duty arises: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Immobiliare, LLC v. Westcor*

12

1  *Land Title Ins. Co.*, 424 F.Supp.3d 882, 889 (E.D. Cal. 2019).  "The latter three circumstances
2  presuppose[ ] the existence of some other relationship," such as a transaction between a seller and
3  a buyer or a contractual relationship.  *Id.*  Plaintiff adequately alleges such a transactional
4  relationship.

5  As for the first and third elements, Plaintiff adequately alleges that his rights were
6  triggered when Centripetal issued shares of stock upon the exercise of stock options by their
7  holder, and that Defendants obscured this fact in their reports and communications with the intent
8  to defraud Plaintiff to deny him the benefit of his investment.  As for the final two elements,
9  Plaintiff sufficiently alleges that he not aware of the alleged exercise of options and that he
10 suffered damages, including the loss of his ability to earn a fair return on his investment.  SAC ¶
11 216.

12 Accordingly, the Court grants the motion to dismiss the constructive fraud claim and
13 denies the motion to dismiss the fraudulent concealment claim.

### G.  Unjust Enrichment (Count Ten)

15 The Court previously dismissed the unjust enrichment claim, reasoning that because
16 Defendants repaid the balance due under the Notes, they did not retain any profit.  The SAC now
17 clarifies that Defendants retained the return on investment that would have redounded to Plaintiff
18 if had he been given the opportunity to convert his Notes.  *Id.* ¶¶ 208–209, 293–302.  Plaintiff
19 provides no authority to support the claim that these retained returns could constitute a profit taken
20 from Defendants under the doctrine of unjust enrichment.  These new allegations do not disturb
21 the Court's previous finding.  The Court grants the motion to dismiss the unjust enrichment claim.

### H.  Violation Of California Code § 1542 (Count Eight)

23 The SAC includes a new claim under Section 1542 to "emphasize the unenforceability of
24 the purported settlement agreement."  Dkt. No. 69 at 15.  Plaintiff concedes that he does not seek
25 damages as a result of any violation of this Section.  *Id.*  The Court grants the motion to dismiss
26 this claim.

### I. Violation of California Corporation Code Section 25401 and 25403 (Counts Eleven and Twelve)

Plaintiff does not contest Defendants' motion to dismiss these counts. Dkt. No. 69 at 3 n.3. The Court dismisses these claims.

## IV. CONCLUSION

Defendants' motion to dismiss for failure to state a claim (Dkt. No. 63) is **GRANTED IN PART** insofar as the Court dismisses:

1. Count Two (breach of fiduciary duty)
2. Count Three (constructive fraud)
3. Count Eight (violation of California Code § 1542)
4. Count Nine (violation of California Code § 1668)
5. Count Ten (unjust enrichment)
6. Count Eleven (violation of California Corporation Code Section 25401)
7. Count Twelve (violation of California Corporation Code Section 25403)

These dismissals are without leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'") (citation omitted). Defendants' motion to dismiss for failure to state a claim is otherwise **DENIED**.

The Court **GRANTS** Defendant Barkworth's motion to dismiss for lack of personal jurisdiction (Dkt. No. 64), without leave to amend, and **DENIES** the motion to stay (Dkt. No. 65).

**IT IS SO ORDERED.**

Dated: 5/8/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge